U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 08-01151

ORDER GRANTING UNITED STATES TRUSTEE'S MOTION TO DISMISS
PURSUANT TO 11 U.S.C. § 707(b)

The relief set forth on the following pages, for a total of 13 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**11/10/2008**



US Bankruptcy Court Judge
District of South Carolina

Entered: 11/12/2008

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>John G. Calhoun and<br>Glenda R. Calhoun,<br><br>                        Debtors. | C/A No. 08-01151-DD<br><br>Chapter 7<br><br>**ORDER GRANTING UNITED STATES TRUSTEE'S MOTION TO DISMISS PURSUANT TO 11 U.S.C. § 707(b)** |

THIS MATTER is before the Court on the United States Trustee's ("UST") Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(1) Based on the Totality of the Circumstances Under 11 U.S.C. § 707(b)(3)[1] ("Motion"). An evidentiary hearing was held on the Motion. John G. Calhoun, Glenda R. Calhoun ("Debtors"), and the UST appeared at the hearing by and through counsel. This Court has jurisdiction pursuant to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 7052 and 9014, the Court makes the following Findings of Fact and Conclusions of Law[2]:

*Facts*

1. Debtors are husband and wife and they filed a joint voluntary petition under chapter 7 of the Bankruptcy Code on February 27, 2008.

2. Debtors live at 208 Tennis Ranch Rd., Jackson, South Carolina. The Debtors' home is a 4-bedroom, 3 full bath, and one office home of approximately 3,300 SF

---

[1] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 et. seq., will be by section number only.

[2] To the extent any Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

1

which sits on 3.5 acres of land. Debtors currently owe $206,800.00 and $92,000.00 on their mortgages, as reflected on Debtors' Schedule D.

3. Evidence presented at trial demonstrates that Debtors lived in their home since 1981. Debtors attempted to sell their home in 2000 after their oldest child finished high school. During the two years that the property was for sale only three potential buyers looked at the property and Debtors received no offers. In 2003, convinced that they would not be able to sell their home, Debtors undertook a substantial renovation of their home to account for possible infirmity later in life. The renovations cost approximately $130,000 and required Debtors to incur substantial debt, increasing their mortgage payments.

4. Debtors' own a lien free 1995 Ford F150 pickup truck and lease a 2007 Honda Accord.

5. The Debtors' income, as shown by Schedule I, comes from Mr. Calhoun's two retirement accounts which pay him $7,313.00 monthly and his Social Security benefit which pays $1,459.00 monthly. Testimony at trial indicates that the income from the retirement accounts is fixed and will not change during Mr. Calhoun's lifetime. Mrs. Calhoun will receive a reduced benefit in the event that Mr. Calhoun predeceases her. Mr. Calhoun retired April 1, 1997.

6. Debtors' children are grown, but testimony established that the Debtors provide some level of care for their granddaughter, including picking her up from school and providing some evening meals.

7. Debtors' Schedule J reports the following expenses:

| | |
|---|---|
| Home Mortgage (tax and ins. not included) | $2,151.00 |
| Electricity and heating fuel | $ 303.00 |

2

| | |
|---|---:|
| Water and sewer | $ 32.00 |
| Telephone | $ 43.00 |
| Other: Cable, internet, and trash collection | $ 190.00 |
| Home maintenance | $ 60.00 |
| Food | $ 930.00 |
| Clothing | $ 60.00 |
| Laundry and dry cleaning | $ 80.00 |
| Medical and dental expenses | $ 184.00 |
| Transportation | $ 350.00 |
| Recreation | $ 29.00 |
| Charitable contributions | $ 880.00 |
| Homeowner's Insurance | $ 82.00 |
| Life Insurance | $ 439.00 |
| Health Insurance | $ 286.00 |
| Auto Insurance | $ 103.00 |
| Property Taxes (not deducted from wages) | $ 110.00 |
| Installment Payments (Auto) | $ 250.00 |
| Installment Payments (IRS) | $ 539.00 |
| Other: (exclusion of Social Security income, bank fees, and personal care) | $1,538.00 |
| Total Average Monthly expenses | $ 8,639.00 |
| | |
| Average monthly income from Schedule I | $ 8,772.00 |
| Average monthly expenses from above | $ 8,639.00 |
| Monthly net income | $ 133.00 |

8. With the Social Security benefit Debtors have $1,592.00 in monthly net income, using Debtors expense projections.

9. Debtor's annualized household gross income is $105,264.00. The applicable median income for a household size of two in South Carolina is $46,521.00. Because the annualized current monthly income exceeds the median income for Debtor's household Debtors were required to complete all sections of Form B22A.

10. In Part V of Form 22A Debtor lists the following deductions:

**Subpart A: Deductions under Standards of the Internal Revenue Service (IRS)**

| Line | | |
|---|---|---:|
| 19 | National Standards: food, clothing, household supplies, personal care, and miscellaneous. | $925.00 |

3

| | | |
|---|---|---:|
| 20A | Local Standards: housing and utilities; non-mortgage expenses. | $426.00 |
| 22 | Local Standards: transportation; vehicle operation/public transportation expense. | $362.00 |
| 23 | Local Standards: transportation ownership/lease expense; Vehicle 1. | $478.00 |
| 24 | Local Standards: transportation ownership/lease expense; Vehicle 2. | $478.00 |
| 25 | Other Necessary Expenses:  taxes. | $556.83 |
| 27 | Other Necessary Expenses:  life insurance. | $439.00 |
| 31 | Other Necessary Expenses: health care. | $76.00 |
| 32 | Other Necessary Expenses: telecommunication services. | $69.00 |
| 33 | Total Expenses Allowed under IRS Standards. | $3,917.83 |
| **Subpart B: Additional Expense Deductions under § 707(b)** | | |
| 34 | Health Insurance. | $286.00 |
| 40 | Continued charitable contributions. | $884.00 |
| 41 | Total  Additional  Expense  Deductions  under  §  707(b) | $1,170.00 |
| **Subpart C: Deductions for Debt Payment** | | |
| 42 | Future payments on secured claims.<br>a. Chase -     $1,284.00<br>b. Wells Fargo -$867.00<br><br>Total $2,151.00 | |
| 44 | Payments on priority claims. | $91.36 |
| 46 | Total  Deductions  for  Debt  Payment. | $2,242.36 |
| **Subpart D: Total Deductions Allowed under § 707(b)(2)** | | |
| 47 | Total of all deductions allowed under § 707(b)(2) | $7,330.19 |

11. The UST did not object to Debtor's calculation of the means test. A presumption of abuse pursuant to § 707(b)(2) does not arise.

12. The parties stipulate and Schedule F reflects that Debtors' owe approximately $106,707.00 in unsecured non-priority debt and $5,552.00 in unsecured priority debt, as demonstrated by stipulation and Schedule E.

13. Evidence presented at trial indicates that Debtors unsecured debts primarily stem from the use of credit cards. Evidence further demonstrates that Debtors' last charge on these accounts was made in March of 2006. Debtors attribute much of

4

their financial strain to cross default clauses of credit card agreements that increased interest rates and accelerated the growth of their credit card debt.

14. The parties stipulate that Debtors' debts are primarily consumer debts.

15. Prior to filing chapter 7 bankruptcy, Debtors' made payments to ClearPoint Credit Counseling Services and other creditors totaling $2,638.00 per month from April of 2006 to February 2008. Evidence presented at trial indicates that during this period Debtors did not get behind with their household expenses but did not have money for emergencies, major repairs, or contingencies.

16. Mr. Calhoun is the retired CFO of a major hospital. Prior to filing bankruptcy he researched his options and located information concerning the means test on the internet. He testified that he completed the means test and determined that he "passed the test." Mr. Calhoun is sophisticated concerning financial matters.

### *CONCLUSIONS OF LAW*

Section 707(b)(1) provides that, after notice and a hearing, the Court may dismiss a case filed by an individual whose debts are primarily consumer debts if it finds that granting relief would be an abuse of the provisions of chapter 7. The UST seeks a determination of abuse under § 707(b)(3) which provides,

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider-
>
>> (A) whether the debtor filed the petition in bad faith; or
>> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

5

Section 707 of the Bankruptcy Code was significantly amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 ("2005 Amendments"). Prior to the enactment of the 2005 Amendments determinations of *substantial* abuse (emphasis added), the standard for dismissal under prior law, were made in this judicial circuit under a totality of the circumstances test set forth in *Green v. Staples*, 934 F.2d 568 (4th Cir. 1991). In *Green*, the court adopted a test for analyzing the evidence of substantial abuse which, in addition to addressing the debtor's ability to pay, included consideration of:

> (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
> (2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
> (3) Whether the debtor's proposed family budget is excessive or unreasonable;
> (4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and
> (5) Whether the petition was filed in good faith.

*Id.* at 572. The *Green* court determined that a debtor's ability to pay could not alone establish substantial abuse under chapter 7, resting the decision upon, "the statutory presumption that a debtor's Chapter 7 petition should be granted." *Id.* The court in *Green* did however indicate that, "the debtor's ability to repay is the *primary* factor to be considered (emphasis in the original)." *Id.*

This Court previously stated "that much of the underpinning of *Green* is removed by the 2005 amendments to the Bankruptcy Code." *In re Wolf*, 390 B.R. 825, 831-32 (Bankr. D.S.C. 2008). The presumption in favor of granting relief to the debtor is no longer a part of the Bankruptcy Code. *Id.* at 832. The 2005 Amendments partially restrict the availability of chapter 7 relief to insolvent debtors by imposing a means test

on above median income debtors. *Id.* The standard for dismissal is no longer 'substantial abuse' but 'abuse.' *Id.* Additionally, the totality of the circumstances test is necessarily different under the 2005 Amendments. In *Wolf* the Court considered the issue of bad faith and noted, "[a] debtor's good faith in filing a petition, a *Green* totality of the circumstances factor, is now a separate basis for a finding of abuse." *Id.* at 833.

Prior to the enactment of the 2005 Amendments to the Bankruptcy Code, the Courts of Appeals had adopted variations on the totality of the circumstances test. *See, e.g., In re Kelley*, 841 F.2d 908 (9th Cir. 1988); *In re Lamanna*, 153 F.3d 1 (1st Cir. 1998); *In re Krohn*, 886 F.2d 123 (6th Cir. 1989); *In re Harris*, 960 F.2d 74 (8th Cir. 1992). Each test included an ability to pay factor that was given varying weight. Ability to pay one's debts is a proper factor for consideration of dismissal under the post-amendment test as well. There is considerable debate concerning the relationship of the means test to the ability to pay analysis following the 2005 Amendments. "While some argue that the means test replaces consideration of the ability to repay creditors, the majority and better view is that ability to pay is an important part of the consideration of the totality of the circumstances." *In re Wolf*, 390 B.R. at 833, *citing In re Zaporski*, 366 B.R. 758, 771 (Bankr. E.D. Mich. 2007); *In re Pak*, 343 B.R. 239, 241-44 (Bankr. N.D. Cal. 2006); *In re Mestemaker*, 359 B.R. 849, 853-57 (Bankr. N.D. Ohio 2007); *In re Simmons*, 357 B.R. 480, 487-89 (Bankr. N.D. Ohio 2006).

In determining whether a chapter 7 case is an abuse when the presumption of abuse does not arise, other courts have looked to the totality of the debtor's financial situation pursuant to § 707(b)(3)(B). *See In re Henebury*, 361 B.R. 595, 603 (Bankr. S.D. Fla. 2007). In *Henebury*, the court noted that § 707(b)(3) "specifically delineates the

7

pertinent inquiry as the 'totality of the circumstances *of the debtor's financial situation* (emphasis in original).'" *Id.* at 607, *citing* 11 U.S.C. § 707(b)(3)(B).  In this manner, the debtor's total financial situation as a measure of ability to pay, and bad faith are separate and sufficient grounds for dismissal.  *Id.*  Therefore, "[e]ither ability to pay *or* bad conduct in connection with the bankruptcy will warrant dismissal for abuse under § 707(b)(3) (emphasis in original)."  *Id.*  The court in *Henebury* concluded that under the 2005 Amendments, "the ability to pay, standing alone, is sufficient to warrant dismissal of a Chapter 7 case for abuse pursuant to 11 U.S.C. § 707(b)(3)(B)."  *Id.*  Since the 2005 Amendments, other bankruptcy courts have held that a determination of abuse under the totality of the circumstances of the debtor's financial situation necessitates analysis of a debtor's actual ability to pay.  *See In re Lenton*, 358 B.R. 651 (Bankr. E.D. Pa. 2006); *In re Richie*, 353 B.R. 569 (Bankr. E.D. Wis. 2006); *In re Paret*, 347 B.R. 12 (Bankr. D. Del. 2006); *In re. Pak*, 343 B.R. 239 (Bankr. N.D. Cal. 2006).  This Court now holds that, while the totality of all of the debtor's financial circumstances must be examined, the ability to pay a significant dividend to creditors and the failure to do so standing alone can be an abuse of chapter 7, absent mitigating factors.

In the case at hand, testimony and other evidence establishes the Debtors' ability to make a substantial payment to their creditors.  The Court's analysis must begin with Schedules I and J.  Debtors admit to $133.00 per month of disposable income.  The Debtors report and then subtract income from Social Security, shielding it from creditors.  This is not proper.  In two instances Social Security benefits are specifically excluded from income calculations by the Bankruptcy Code.  Income received under the Social Security Act is excluded from "current monthly income" in computing the means test for

8

the purpose of determining whether a presumption of abuse arises under § 707(b)(2). *See* § 101(10A)(B). Social Security income is also excluded from the calculation of disposable income for above median income chapter 13 debtors. *See* §§ 1325(b)(2); 101(10A)(B); *In re Siegel,* 2006 WL 3483987 (Bankr. D.S.C. Nov. 20, 2006). Congress clearly knew how to exclude benefits under the Social Security Act from consideration but did not do so in connection with the § 707(b)(3)(B) totality of the circumstances test. Because this test was added to the Bankruptcy Code at the same time exclusions of Social Security Act income were added to other sections of the Bankruptcy Code the failure to exclude the benefits is even more significant. Such income should not therefore be excluded from consideration in analyzing ability to pay as a component of the totality of the debtor's financial circumstances under § 707(b)(3). This is consistent with pre amendment caselaw in which courts recognized Social Security benefits as income. *See In re Solomon*, 67 F.3d 1128, 1132 (4th Cir. 1995) (citing *In re Schnabel*, 153 B.R. 809 (Bankr. N.D. Ill. 1993); *In re Hagel*, 171 B.R. 686 (Bankr. D. Mont. 1995)).

Having established the extent of Debtors' income, we next look to the Debtors' expenses reflected on Schedule J and to the testimony concerning spending habits. Prior to filing for chapter 7 relief, Debtors paid $2,638.00 per month to their unsecured creditors through payments to ClearPoint Credit Counseling Services for a period of 22 months. When pressed on cross-examination as to whether they were willing or able to make similar payments to creditors while in bankruptcy, Mr. Calhoun indicated that such payments were overly burdensome and that Debtors were able to rebut the presumption of abuse by passing the means test and therefore were not required to consider a chapter

13 repayment plan. This evidence of creditor payment over a long period of time necessitates further examination of Debtors' financial situation.

While the underpinnings of *Green* have been removed, at least insofar as they relate to the insufficiency of ability to pay as a sole ground for finding abuse, *Green* remains useful and binding as a framework for addressing the totality of a debtor's financial circumstances. We then turn to the *Green* factors. Testimony demonstrated that this case was not filed as a result of sudden illness, calamity, disability, or unemployment. While nothing in the record indicates that the Debtors' incurred debt from cash advances, the Debtors did incur substantial debt. This includes some $130,000 for renovations to the home following Mr. Calhoun's retirement and nearly $107,000 in unsecured nonpriority debt according to Debtors' Schedule F.

The next factor, and one tied to the ability to repay debt, is the Debtor's budget. Debtors' proposed family budget is excessive and there is ample room for the reduction of expenses. Debtors enjoy a substantial annual income of $105,664.00, which is 226% of the median income for a household of two in South Carolina. With this substantial income, debtors' expenses border on the extravagant. Testimony presented at trial demonstrates that debtors spend $439.00 per month on two term life insurance policies. When examined by the UST on the necessity of both policies, Mr. Calhoun explained that one policy was maintained to pay off the mortgages and the other policy would provide for Mrs. Calhoun after his death. However, Mr. Calhoun's income from retirement accounts will continue to provide Mrs. Calhoun with 75% of the monthly income after his death, obviating the need for the second life insurance policy. Debtors also claim to spend $930.00 per month on food. This is excessive. The Debtors have expenses for

cable and internet, they spend a substantial sum for laundry and dry cleaning each month, and they did not justify their transportation expense in light of the reduced need for travel during retirement.  Additionally the installment payment to the Internal Revenue Service will be completed after approximately one year and that money will then be freed for other purposes.  The tax debt, while paid with a distribution priority in a bankruptcy case, is an unsecured debt and could easily be paid through a chapter 13 plan, as noted at Line 44 of Debtors' Form 22A.  The Debtors' housing expense is excessive at 296% of the Mortgage or Rent standard for Aiken County, South Carolina ($ 726.00 per month).  *See* http://www.usdoj.gov/ust/eo/bapcpa/20080201/bci_data/housing_charts/irs_housing _charts_SC.htm (November 5, 2008).

The contention that the Debtors cannot now pay any dividend to the unsecured creditors is undermined by the fact that Debtors made a significant payment for 22 months.  The Debtors paid $2,638.00 to creditors without falling behind in payment of other household expenses.  This undermines the credibility of the scheduled current living expenses and suggests that the expenses are significantly over-stated.

Mr. Calhoun testified that whatever his ability to pay may be at present, his income is fixed and will be eroded by increases in expenses and the absence of cost of living increases.  First, Mr. Calhoun's calculations ignore the likelihood of future Social Security cost of living increases.  Additionally, while it is true that his other retirement income will not be adjusted for inflation, the level of increase for the family's expenses is speculative.  The Debtors have a present ability to pay creditors and, while it may be diminished by future increases in the cost of living, it does not appear that the ability to pay will disappear over the next five years.

11

In summary the *Green* factors of no sudden precipitating cause for filing bankruptcy, incurring consumer debt far in excess of the ability to repay, an excessive budget, and overstating expenses all weigh against the Debtors and thus do not mitigate the finding that Debtors have an ability to pay a substantial portion of their debt. The evidence proves abuse of chapter 7 and the case should be dismissed. If a motion to convert to chapter 13 is not filed within 10 days, Debtors' case will be dismissed pursuant to this order.

**AND IT IS SO ORDERED.**
Columbia, South Carolina
November 10, 2008